UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY STEWART,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

CIVIL ACTION NO. 07-11825

DISTRICT JUDGE PAUL D. BORMAN

MAGISTRATE JUDGE VIRGINIA MORGAN

**REPORT AND RECOMMENDATION**

This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits. For the reasons discussed in this Report, it is recommended that the plaintiff's motion for summary judgment be denied, that of the defendant granted, and the decision denying disability be affirmed.

Plaintiff alleged that he became disabled as of May 20, 2002, due to bilateral carpal tunnel syndrome.[1] The ALJ found that plaintiff had "severe" impairments of bilateral carpal

[1]There is a problem with the period of time between August and December, 2005. Plaintiff's earnings records and his testimony establish that he worked, earning $23,190 in 2005 between August and December. He first denied to the ALJ that he had any employment but then clarified that he worked a temporary job at the plant which had been arranged by the medical department, and it was during a labor strike (Tr. 245-246). Plaintiff also stated that he received $23,000 during the last quarter of 2005, but at least a portion of it was from an insurance company (Tr. 247). The ALJ denied the application at step one for that period. The ALJ considered his disability before and after that time.

tunnel syndrome established by an electrodiagnostic study and obstructive sleep apnea as established by a sleep study. The ALJ further found that none of his impairments, individually or in combination, met the Listings. Neither did they prevent the performance of light work, including his past relevant work. The ALJ found plaintiff's description of his limitations less than fully credible and denied benefits. That decision became the final decision of the agency from which plaintiff now appeals.

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. §

423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

Plaintiff, born in 1954, was 48 years old at the time of his alleged onset date and 52 years old at the time of the ALJ's decision. He lives in Owosso, has a high school education and past relevant work as a lathe machine operator, automobile assembler, spot welder, test driver, and sorter[2] (Tr. 78-79, 81, 84, 242-44, 258-60). Plaintiff testified that he lived by himself in a second floor apartment. He had no difficulty with the stairs. He had no problems sitting, standing, or walking (Tr. 242, 252). He could lift a gallon of milk (8 pounds), did his own laundry, went grocery shopping, and with the help of his children did his own yard work and lawn mowing (Tr. 249, 256). When he cuts up vegetables, his hands bother him (Tr. 249). He has trouble opening jars (Tr. 252). He drove about three or four times a week, visiting his parents and to doctors' appointments, and could drive for four hours before he had to stop and rest. Occasionally plaintiff drops things as a result of his hand problems (Tr. 253). He uses braces and splints for his hands (Tr. 96). His hobbies include golf and fishing (Tr. 96). He usually plays golf at least once a week, either nine or eighteen. He uses a cart. He also takes golf lessons weekly (Tr.

---

[2]Plaintiff's sorter work which he did in the last quarter of 2005 is an issue that he raises in this case. He told the ALJ that it was something that he stopped doing because of his symptoms. He also testified, inconsistently, that he stopped working at that job because the job ended. Plaintiff argues that is not something that should be considered as past relevant work.

110). But, no practicing, that is out because of his hands (Tr. 257). Plaintiff identified his treating physicians as Barbara Chapman, D.O.(pain), Kirk Herrick, D.O. (hands) (Tr. 80), and Nathan Gross, M.D. (EMG) (Tr. 103). He had hand surgery (CTS release) in 1995 at the request of Dr. Chapman (Tr. 105, 121). Plaintiff had an EMG in 2001 which showed mild CTS (Tr. 225-226).

Plaintiff alleges that the ALJ committed errors of law that require reversal and an award of benefits. Plaintiff alleges that the ALJ failed to properly evaluate the medical records and that consequently the hypothetical given to the vocational expert did not accurately portray plaintiff's impairments.

The ALJ found that the medical record did not support the imposition of limitations greater than the assessment of the state agency evaluating medical consultant (Tr. 206-207). The EMG carpal studies reveal motor and sensory delays and plaintiff has presented with some Tinel and Phalen's signs in his wrists. However, the ALJ noted that reports of atrophy are isolated and more often no atrophy was observed. Sensation in plaintiff's hands has generally been found to be intact. There is no evidence of intrinsic loss of function in the hands. During the consultive examination, plaintiff demonstrated fully function of his hands. He produced between 100 and 110 pounds of grip strength in his right and 47 to 66 pounds in his left. Consistent with that, the EMG reports describe plaintiff condition as "mild." His treating orthopedists have restricted him only from "repetitive use" of forceful gripping and vibrations. His sleep apnea is fully treatable.

In 2002, Dr. Gross examined plaintiff. Wrist motions were normal, there was some evidence of Tinel's and Phalen's. Dr. Gross indicated that plaintiff has a variable degree of

symptoms and clinically bilateral CTS is suggested. He requested an EMG but plaintiff stated that he did not wish to undergo the procedure again. Plaintiff could work but should not be in a scenario where he exposes his hands or palms to sustained impact or vibratory forces. He should not engage in forceful pinching or squeezing for sustained or repetitive time frames (Tr. 147-148).

Dr. Neil Friedman examined plaintiff in June, 2004. He noted that Dr. Fram, who performed an EMG in 2002, diagnosed mild CTS. On examination, Tinel's sign was negative on the left and mildly positive on the right. Plaintiff attributes these to too tight handcuffs which were used on him by the police ten days earlier when they assaulted him (Tr. 194). Office notes from Dr. Chapman from 2003 through April 2004 note ongoing complaints, but no evidence of atrophy. Plaintiff was treated conservatively with rest and various anti-inflammatory medications (Tr. 194). Range of motion studies were normal (Tr. 195-196). Grip strength was about 100 on the right and 66 on the left (Tr. 198).

Plaintiff was first seen and examined by Dr. Awerbuch, M.D. in July, 2006. He was seen for a sleep study. Dr. Awerbuch also performed a nerve conduction study which showed median motor and sensory latencies were delayed bilaterally. He also performed a needle examination (a needle electromyography) on selected muscles. Interference and recruitment patterns were full. Motor unit potentials were normal (Tr. 232). Plaintiff had positive Tinel's and Phalen's. From the examination, Dr. Awerbuch concludes that plaintiff has CTS bilaterally.

Elizabeth Ramos-Brown testified as the vocational expert. She identified plaintiff's past work as the bench lathe operator as skilled, medium work; the auto assembler job was unskilled

and medium; the spot welder job was unskilled and medium; test driver was skilled, light; and the sorter was semi-skilled, light work (Tr. 262-265).

The ALJ asked the vocational expert to assume a person of plaintiff's age and educational level and the restrictions imposed in the residual capacity assessment (Tr. 206-207): lifting no more than twenty pounds occasionally, ten pounds frequently; sitting, standing, and walking six hours a day with normal breaks. Sitting six hours with normal breaks. Pushing and pulling, operation of arm controls–limited in the upper extremities to only occasional pushing and pulling. Never any climbing of ladders, ropes, or scaffolds but otherwise no postural limitations. Can perform climbing, balancing, stooping, kneeling, crouching, and crawling frequently. Restricted in handling and fingering with both upper extremities and bilateral overhead reaching to "frequent;" cannot perform "constant." The individual should avoid even moderate exposure to vibrating tools and should not work around heights, dangerous moving machinery and the like.

The expert opined that such a person would not have transferable skills and could perform the sorting job but no other past relevant work. However, such a person could perform unskilled light jobs that existed in significant numbers, specifically cashier II (825,000 jobs nationally, 2000 locally), counter clerk (498,500 nationally, 1000 locally), conveyor belt bakery worker (147,100 nationally, 500 locally). If handling, fingering, and feeling could be done only occasionally, the cashier job would be excluded but the other two would not. (Tr. 268-269)

If the report of Dr. Awerbuch were fully credited and plaintiff were restricted to less than ten pounds occasionally, less than ten pounds frequently, stand and walk two hours a day, need

to alternate at will between sitting and standing, severe limitation of pushing and pulling bilaterally, and no repetitive use of hand, no forceful grasping or gripping, no power or vibratory tools, limited driving, and the statement that limitations would disrupt regular works schedule with low physical demands two hours a day, ten hours a week, or forty hours a month, then plaintiff could not work because the disruption of work activities on the average of forty hours a month. If he had to nap during the work day for one to two hours, then that would also preclude work.

Plaintiff had been to see Dr. Awerbuch for the first time in July, 2006, and for the second time just before the hearing. Dr. Awerbuch diagnosed sleep apnea and prescribed a sleep machine. That is the first time that plaintiff was aware that he had such a condition. Plaintiff got the sleep machine about a month prior and was trying to use it (Tr. 271-272). The ALJ evaluated the report of Dr. Gavin Awerbuch, plaintiff's sleep disorder physician. He afforded the opinion little weight. His assessment is inconsistent with his own treatment records. The records reflect that plaintiff's sleep apnea is effectively treated with the CPAP device. There is no evidence that the sleep apnea results in significant fatigue or inappropriate episodes of sleep. With respect to plaintiff's carpal tunnel, Dr. Awerbuch's opinion is inconsistent with the EMG studies which indicate the condition is mild. His opinion is also inconsistent with other physicians who have evaluated plaintiff's functional capacity.

Plaintiff claims the ALJ did not properly evaluate his complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367

(6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard. 20 C.F.R. § 404.1529 (1995). A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991).

Here plaintiff has demonstrated that he has CTS, but the objective evidence shows this to be mild and not supportive of the disabling pain that plaintiff alleges. In addition, his daily activities are inconsistent with the disabling pain that he alleges. He drives, does yard work, house work, fishes and golfs weekly. This level of activity is consistent with an ability to perform the light work identified by the vocational expert, whether or not his past sorter job is included.

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: February 5, 2008

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 5, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan